Robyn Fyffe ISB# 7063
FYFFE LAW LLC
PO Box 5651
Boise, Idaho 83705
(208) 338-5231
robyn@fyffelaw.com

Attorney for the Defendant

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BIBIKOV,<br><br>Defendant. | Case No. 1:18-cr-258-BLW-7<br><br>**DEFENDANT DAVID BIBIKOV'S RESPONSE TO THE GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE**<br>**[dkt 1644]** |

      The Defendant David Bibikov, through his attorney Robyn Fyffe, hereby responds to the government's motion for preliminary order of forfeiture, filed as Docket Number 1644. According to the government, David's Amazon sales totaled $5,419,969.19 and this total reflects "proceeds" of the crime that are forfeitable as a money judgment. Motion, p. 27-28. However, the government applies the incorrect definition of "proceeds" and requests substantially more than allowed by either statute or the constitution.

      Specifically, because David sold lawful goods in an "illegal manner," the term "proceeds" means the money acquired "less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). Evidence that will be presented at the forfeiture trial regarding David's

1    DEFENDANT DAVID BIBIKOV'S RESPONSE TO THE GOVERNMENT'S MOTION FOR PRELIMINARY ORDER OF FORFEITURE [dkt 1644]

tax returns for the years 2013 to 2017, which were produced by the government in discovery, will establish that David's businesses conducted approximately 5 million in sales and paid approximately 4.6 million for the cost of the goods sold. Thus, if the government shows that the entirety of David's businesses were part of the fraudulent scheme, the Court should order that he pay approximately $400,000.

Even if the refurbished phones became "illegal goods" when sold with spurious marks on packaging or screen protectors, which would invoke the broader definition of "proceeds" under § 981(a)(2)(A) and is not limited to "profit," the total Amazon sales cited by the government exceeds the amount that David "obtained" within the meaning of the statute. Finally, imposing a $5.5 million money judgment in David's circumstances would constitute a disproportionate punishment in violation of the 8th Amendment. Accordingly, the evidence to be presented during the forfeiture trial will establish that the government is not entitled to the amount of forfeiture set forth in its motion.

**Brief Summary of Trial Evidence**

In 2013, David invited his friend Artur Pupko to apply for a job at Mid-Star where David worked testing and selling phones for his older cousin Paul. *See i.e*. Dkt 1560, JT Day 19, p. 3349-50 (Pupko testimony). While Artur initially sold a few phones for David in addition to testing and selling for Mid-Star, Paul prohibited David from selling "on the side" after a couple months and Artur did not sell any more phones for David. *Id*. at p. 3350-51, 53. And in late 2013, Paul discovered that David had continued to sell his own phones and became very angry. *Id*. at p. 3352. In September 2013, Paul removed David from the bank account for Pacific

Cellular, which had been opened in January 2013 and was the only account they had jointly held, and required David to sign an employment contract that included a non compete clause. Exhibit 2405 p. 6 (employee hand book signed by David in September 2013 with clause prohibiting him from sourcing his own phones); Exhibit 13092, p. 1 (Removing David Bibikov as signor for Pacific Cellular). In May 2014, David left Paul's employment. *See i.e*. Dkt 1560, JT Day 19, p. 3352-53 (Pupko testimony); Exhibit 3203, p. 1-77. After David left, Paul hired the Bukhanstovs who worked for several months before becoming uncomfortable selling refurbished/used phones in Amazon's new category. *See* Dkt 1561, JT Day 20, p. 3531-3614.

Between 2014 and 2018, David operated about 5 businesses that made the lion's share[1] of the sales, which the government contends are proceeds. *See* Exhibits 1254 (bank records for 6 business); 1605 (Secretary of State documents for five businesses). He shared no bank accounts, no PO Boxes, and no suppliers with his cousins. *See* Exhibits 1250 (money flow summary); 1258 (Bibikov foreign wires); Exhibit 1263 (David's companies not listed on exhibit summarizing foreign wires to suppliers); Exhibit 1400 (no shared PO boxes). However, evidence that David purchased some inventory from his cousins and collaborated on issues such as appeal letters and invoices presumably formed the basis for the jury's verdicts finding David guilty of conspiracy to traffic in counterfeit goods and conspiracy to commit wire fraud.

In the video recording of the controlled purchase on December 2, 2016, David advised the CHS that the chargers in the kits, which he provided with the phones, were bad, and that

---

[1] Exhibit 1505's summary of Amazon sales, which the government cites in its motion, includes about $122,000 in sales for Celltronix. David only sold on the Celltronix account while working for Paul. *See* Exhibit 1043 (Chase Bank Statement for Celltronix November to December 2012); Exhibit 1044 (four Celltronix checks to Midstar from November to December 2012).

David would instead give the CHS "real OEM" chargers that he purchased from a United States supplier. Exhibit 2010A. The video then reveals David removing the chargers from the kits and providing the CHS with chargers from a separate box, while the CHS jokes about spelling errors on the chargers that David did *not* sell.

The jury was not fooled by the government's specious arguments regarding the CHS's deceptive focus on the chargers that ended up in the trash and found that David was *not* guilty of trafficking in counterfeit cell phone chargers as charged in Count 28. Finally, the jury found that on about December 12, 2017, David used interstate wire communications to advertise, sell, and cause the purchase of a counterfeit Apple iPhone listed as "new" on Amazon.com, and that he used the United States Postal Service to send and deliver that iPhone, which violated 18 U.S.C. § § 1341, 1343 as charged in Counts 9 and 18 of the Indictment.

**Argument**

Pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461, property that constitutes or is derived from "proceeds" traceable to an offense constituting "specified unlawful activity," such as mail and wire fraud, is subject to forfeiture. *United States v. Thompson*, 990 F.3d 680, 686 (9th Cir.), *cert. denied*, 142 S. Ct. 616 (2021). Mail or wire fraud necessarily includes a fraudulent scheme as a whole and, thus, the proceeds of the crime can include additional executions of the scheme that were not specifically charged. *United States v. Lo,* 839 F.3d 777, 793 (9th Cir. 2016). Nevertheless, forfeiture is limited to property the defendant himself actually acquired as the result of the crime and does not apply when the individual in question did not reap the profits of

the crime. *Honeycutt v. United States*, 137 S. Ct. 1626, 1635 (2017); *Thompson*, 990 F.3d at 686; *United States v. Henry*, 984 F.3d 1343, 1355 (9th Cir.), *cert. denied*, 142 S. Ct. 376 (2021).

According to the government, David obtained $5,419,969.19 in Amazon deposits during the scope of the "fraud proven at trial" and those gross receipts represent the proceeds of the crime. Motion, p. 27-28. However, in the case of "illegal goods," the term "proceeds" means "property of any kind obtained directly or indirectly" from the commission of the offense and "is not limited to the net gain or profit realized from the offense." 18 U.S.C. § 981(a)(2)(A). Conversely, if the case involves "lawful goods or lawful services that are sold or provided in an illegal manner," "proceeds" means the money acquired "less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). "Simply because something is a 'specified unlawful activity' under § 981(a)(1)(C) does not automatically render it an 'unlawful activity' under § 981(a)(2)(A)." *United States v. Courtney*, 816 F.3d 681, 686 (10th Cir. 2016), citing *United States v. Nacchio,* 573 F.3d 1062, 1088-89 (10th Cir. 2009); *see also United States v. Martin,* No. 1:13-CR-0065-BLW, 2014 WL 221956, at *4 (D. Idaho Jan. 21, 2014).

In arguing "proceeds" are the total receipts, the government's motion does not cite § 981(a)(2)(B) or the distinction between illegal goods and goods sold in an "illegal manner." Instead, the government argues the Ninth Circuit "clarified that proceeds n the forfeiture context includes receipts and is not limited to profit. Motion, p. 7, citing *United States v. Prasad*, 18 F.4th 313, 319 (9th Cir. 2021) (defendant "obtained" the entire sum that he received from end-clients as part of visa fraud scheme under § 982's definition of proceeds); *United States v.*

*Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) ("broad definition of proceeds" is the amount that the defendant stole rather than the amount he has available to pay).

However, *Prasad* interpreted § 982's definition of proceeds, which defines proceeds as property of any kind "obtained directly or indirectly" from the crime and mirrors the definition of proceeds in the case involving from the sale of illegal goods under § 981(a)(2)(A). *Prasad* is inapposite in determining whether § 981(a)(2)(B), rather than § 981(a)(2)(A), should apply.

And the government's trial evidence established that the defendants used counterfeit marks on and in connection with refurbished phones, which facilitated the ability to sell the phones in the "new" category on Amazon. An iPhone did not transform into an "illegal good" when it was refurbished with an after-market screen and placed in a "fake" box with inferior shrink-wrap and cardboard. And the customers who purchased the phones and successfully used them on the cellular network did not possess contraband simply because the brand holders did not authorize the sale.

Rather, the phones were sold under a false designation — as brand-new. *See also Martin*, No. 1:13-CR-0065-BLW, 2014 WL 221956, at *5 (D. Idaho Jan. 21, 2014) (guardrails and barriers were "lawful goods or lawful services" within the meaning of § 981(a)(2)(B) because they were lawful goods sold under a false designation). Indeed, the false representation that the iPhone was "new" in Counts 9 and 18 is what supports finding the likelihood of confusion that elevated a "spurious" mark into a "counterfeit" mark for purposes of the criminal statute. On the other hand, customers purchasing an iPhone sold as refurbished would anticipate that it would come with an after-market battery and/or in box not made by Apple. The phones that Mr.

Bibikov sold were not inherently illegal and, instead, the jury found that they were sold in an illegal manner.

The nature of David's businesses further emphasizes the appropriateness of applying § 981(a)(2)(B) and deducting the cost of goods sold from the forfeiture. David received international wires from only four suppliers, which were unique to him. *See* Exhibit 1258 (Bibikov foreign wires); Exhibit 1263 (David's companies not listed on exhibit summarizing foreign wires to suppliers). Not only did David not receive CBP seizure notices, none of the suppliers he used are listed on the seizure summary. *Compare* Exhibit 1258 and 1300 (neither David's companies nor his international suppliers listed on summary of CBP seizures).

According to the government's Amazon summary, David sold about 90% phones and, thus, kept his ratings high by selling high quality phones and did not rely on lower-ticket items such as batteries to even out complaints about his phones. *See* Exhibit 1505-4-5 (no Samsung new batteries in Amazon records and Apple branded charges constituting approximately .1% of sales) *and* Exhibit 2300 (56 of 2548 packages seized from 2 business, which is about 2% of the packages, and no batteries were seized). David's choice of suppliers meant he paid higher prices. *See* Exhibit 3203 (Vadim complaining that David's supplier "tech elite" charged too much for refurbished iPhones). David should not be penalized further for choosing to pay higher prices that necessarily lowered his profit margin.

The jury's verdict reflects that David sold lawful goods in an "illegal manner" and, thus, the term "proceeds" means the money he acquired "less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). Evidence regarding David's tax records will show

that between 2013 and 2017, he paid $4.6 million for the cost of goods sold which are not proceeds under § 981(a)(2)(B). Even if the refurbished phones are construed as "illegal goods," the evidence will show that the Amazon sales data exceeds the amount that David "obtained" as interpreted by *Honeycutt* and *Thompson* and imposing a $5 million forfeiture would constitute disproportionate punishment in violation of the 8th Amendment.

Dated this 18th day of November, 2022.

/s/ Robyn Fyffe
ROBYN FYFFE

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 18, 2022, I filed the foregoing document through the CM/ECF system, which caused the following parties to be served by electronic means:

Joshua D. Hurwit
United States Attorney
Katherine L. Horwitz
Christian S. Nafzger
Justin D. Whatcott
Assistant United States Attorneys
Office of the United States Attorney
1290 West Myrtle Street, Suite 500
Boise, ID 83702
kate.Horwitz@usdoj.gov
christian.Nafzger@usdoj.gov
joshua.hurwit@usdoj.gov
justin.whatcott@usdoj.gov

John DeFranco
1031 E. Park Blvd.
Boise, ID 83712
jcd@greyhawklaw.com

Barry L. Flegenheimer
119 First Avenue South, Suite 500
Seattle, WA 98104
barrylfp@gmail.com
*Attorneys for Pavel Babichenko*

Paul E. Riggins
380 South 4th Street, Ste. 104
Boise, ID 83702
rigginslaw@gmail.com

Mike French
BARTLETT & FRENCH PLLP
1002 W. Franklin St.
Boise, Idaho 83702
mike@bartlettfrench.com
*Attorneys for Piotr Babichenko*

Rob S. Lewis
913 W. River Street, Ste. 430
Boise, ID 83702
office@roblewislaw.com

Greg S. Silvey
P.O. Box 5501
Boise, ID 83705
greg@idahoappeals.com
Attorneys for Timofey Babichenko

Jeffrey Brownson
223 North 6th Street, Suite 215
Boise, Idaho 83702
jb@jeffreybrownsonlaw.com
*Attorney for Gennady Babitchenko*

Jay J Kiiha
5700 East Franklin Road, Ste. 200
Nampa, Idaho 83687
jkiiha@whitepeterson.com
*Attorney for Kristina Babichenko*

Nicole Owens
Melissa Winberg
702 W. Idaho Street, Ste. 1000
Boise, ID 83702
melissa_winberg@fd.org
Nicole_Owens@fd.org
*Attorneys for Anna Iyerusalimets*

Ellen Nichole Smith
P.O. Box 140857
Garden City, ID 83714
ellen@smithhorras.com

Craig Durham
223 N. 6th Street, Suite 325
Boise, ID 83702
chd@fergusondurham.com
*Attorneys for Mikhail Iyerusalimets*

    /s/  Robyn Fyffe
    ROBYN FYFFE