UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAVID BIBIKOV,<br><br>Defendant. | Case No. 1:18-cr-00258-BLW<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND GENERAL ORDER OF FORFEITURE |

## INTRODUCTION

Before the Court is the government's motion for a preliminary order of forfeiture against Defendant David Bibikov. Dkt. 1644. The Court conducted a forfeiture hearing on January 25, 2023. The parties subsequently filed their proposed findings of fact and conclusions of law as well as additional briefing. The Court now enters its findings of fact, conclusions of law, and issues a general order of forfeiture.

## BACKGROUND

Mr. Bibikov's case has a long history. He and numerous co-defendants were indicted in August 2018 of conspiracy to commit wire fraud, conspiracy to traffic in counterfeit goods, labels, or packaging, conspiracy to launder money, and

**MEMORANDUM DECISION AND ORDER - 1**

individual substantive counts of the same crimes. Dkt. 1. A superseding indictment followed in May 2019, which included additional charges and criminal forfeiture allegations. Dkt. 210.

In 2021, the case went to trial. At the close of the government's case, it dismissed the money laundering counts. The jury acquitted various defendants of some individual counts but could not reach a verdict as to most of the charges.

The case was retried in 2022. Mr. Bibikov was convicted of conspiracy to commit wire fraud and conspiracy to traffic in counterfeit goods, labels, and packaging. Dkt. 1598. He was also convicted of wire fraud and mail fraud for his sale of a counterfeit iPhone on Amazon on December 12, 2017. *Id.* He was acquitted of a count of trafficking in counterfeit goods related to the sale of allegedly counterfeit Apple cell phone chargers on December 2, 2016. *Id.*

Based on Mr. Bibikov's conviction, the government has moved for forfeiture of facilitating property and a money judgment representing proceeds. Dkt. 1644 at 27-28.

## LEGAL STANDARD

Criminal forfeiture is a mandatory part of punishment. 28 U.S.C. § 2461(c); *United States v. Nava*, 404 F.3d 1119, 1124 (9th Cir. 2005). "Criminal forfeiture operates *in personam* against a defendant to divest him of his title to proceeds from

his unlawful activity as a consequence of his criminal conviction." *United States v. Lazarenko*, 476 F.3d 642, 647 (9th Cir. 2007). Convicted defendants must forfeit "tainted property"—"property flowing from . . . or used in . . . the crime itself," which "the defendant himself actually acquired as the result of the crime." *Honeycutt v. United States*, 137 S. Ct. 1626, 1632, 1635 (2017). There is no joint and several liability in forfeiture. *Id.*

Federal Rule of Criminal Procedure 32.2 and 21 U.S.C. § 853 set out the standards and procedures for forfeiture. 18 U.S.C. § 2323(b)(2)(A); 28 U.S.C. § 2461(c); *Lazarenko*, 476 F.3d at 647. The government has the burden to show, by a preponderance of the evidence, that property is subject to forfeiture. *United States v. Garcia-Guizar*, 160 F.3d 511, 517 (9th Cir. 1998). That requires proof of a nexus between the property and the crime. *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011). The Court applies a "but for" test to nexus: the government must show that the defendant would not have obtained the property but for his illegal activity. *United States v. Martin*, 2014 WL 221956, *4 (D. Idaho).

To determine nexus, the Court may rely on evidence admitted at trial as well as additional relevant and reliable evidence. Fed. R. Crim. P. 32.2(b)(1)(B). Because forfeiture is part of sentencing, the Court may consider evidence,

including hearsay, "without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." *United States v. Petty*, 982 F.2d 1365, 1367 (9th Cir. 1993) (quoting U.S.S.G. § 6A1.3(a)).

The Court must order forfeiture against a defendant convicted of wire or mail fraud. 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c). In these cases, forfeitable property includes "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to" the fraud. *Id.* The statute provides for forfeiture of either gross or net proceeds, depending on the nature of the crime. The Court has already determined that gross proceeds are forfeitable in this case because the defendants were convicted of committing wire fraud by selling counterfeit goods. *Order*, Dkt. 1678 at 3-6. Because the conviction concerns only the proceeds of sales of counterfeit goods, forfeitable proceeds include "property of any kind obtained directly or indirectly, as the result of" conspiracy to commit wire fraud by selling counterfeit goods "and any property traceable thereto." 18 U.S.C. § 981(a)(2)(A).

The Court must also order forfeiture against a defendant convicted of trafficking in counterfeit materials. 18 U.S.C. § 2323(b)(1). In these cases, federal law permits forfeiture of "[a]ny property constituting or derived from any proceeds

obtained directly or indirectly as a result of the commission of" the crime. 18 U.S.C. § 2323(a)(1). The Court has previously ruled that in the context of this statute, "proceeds" means gross proceeds. *Order*, Dkt. 1678 at 6-7.

The statute also provides for the forfeiture of "[a]ny property used, or intended to be used, in any manner or part to commit or facilitate the commission of" the counterfeit trafficking offense. 18 U.S.C. § 2323(a)(1). The statute's language is staggeringly broad, demonstrating congressional intent for forfeiture in criminal trademark and copyright cases to be extensive and punitive. Nevertheless, Mr. Bibikov and his co-defendants argue the Court should define facilitating property by transplanting the "substantial connection test"—which Congress devised for civil proceedings—into 18 U.S.C. § 983(c)(3). The Court will not do so. The Ninth Circuit has not extended this test to criminal proceedings, much less the criminal intellectual property forfeiture provision specifically. More importantly, Congress chose to set out a wide-ranging standard rather than the substantial connection test.

## EXHIBIT ADMISSION

After the forfeiture hearing, Mr. Bibikov moved to admit a number of forfeiture exhibits. *See Forfeiture Exhibit List,* Dkt. 1717-2. The government has advised the Court that it has no objection to the admission of the exhibits.

Accordingly, all exhibits are admitted.

Mr. Bibikov has requested that Def. Forfeiture Exs. D7.6E, D7.6F, D7.6G, D7.6H, and D7.6I be filed under seal. The government has requested that Def. Forfeiture Exs. D7.5J, D7.5O, and D7.5 be filed under seal. The Court will grant those requests *on a temporary basis*. Within 120 days, the parties are directed to file a motion to seal the exhibits, so that the Court can have a better basis to determine whether the appropriate standard for sealing has been satisfied.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    Determining Proceeds

1.    During trial, the evidence established that David Bibikov's businesses perpetuated the fraud and trafficking schemes for which he was convicted.

2.    The chats and emails between David Bibikov and his coconspirators demonstrate that the fraud permeated throughout his business during the course of the proven conspiracy. *See* Ex. 2300 (documenting 14 BuyNowCell packages containing Apple and Samsung cellphones shipped from the Large Warehouse on August 21 and 22, 2018); Ex. 2304, at 8–11 (photographs of BuyNowCell packages collected during Package Warrant); *see also* Ex. 3216.26 (chat between Tim Babichenko and David Bibikov wherein the password and account for BuyNowCell is shared); Ex. 2505,

2505A (fake authorization from Apple for "BuyNowCell" collected from
Small Warehouse on August 22, 2018); *see generally*, Ex. 3216 (a
discussion between Tim Babichenko, David Bibikov, Michael Iyerusalimets,
and Anna Iyerusalimets).

3.    Artur Pupko testified that David Bibikov recruited him into the scheme. He
worked for David Bibikov selling "refurbished" phones as new. Trial 2 Tr.
at 3124-26.

4.    Based on the Amazon records, David Bibikov received $4,710,207.11 in
Amazon deposits for the sale of "New" Apple and Samsung branded
cellphones and chargers during the scope of the fraud proven at trial. *See* Ex.
1505 at 4-5.

5.    He sold 7,924 Samsung-branded cell phones and 7,189 Apple-branded
cellphones. *Id.* at 4-5. He also sold 337 Apple-branded chargers. *Id.*

6.    The government asks for a $5,419,969.19 money judgment—the amount of
Amazon deposits that Mr. Bibikov received for the sale of all "New"
batteries, cellphones, and chargers on Amazon. By implication, the
government argues that evidence that the item sold was listed as new is
sufficient to establish a nexus to Mr. Bibikov's crimes.

7.    Not so. Both conspiracy convictions involved a jury determination that Mr.

MEMORANDUM DECISION AND ORDER - 7

Bibikov sold counterfeit goods.

    a.  "For the alleged conspiracy to commit wire fraud, the government must prove that: (1) beginning in or about January 2008 and ending on or about August 14, 2018, there was an agreement between two or more people *to commit wire fraud by selling counterfeit goods that the defendants represented to be new and genuine*; and (2) the defendant became a member of that conspiracy, knowing of at least one of its objects an intending to help accomplish it." Dkt. 1602 at 28 (emphasis added)

    b.  "For the alleged conspiracy to traffic in counterfeit goods, labels, or packaging, the government must prove that: (1) beginning in or about January 2008 and ending on or about August 14, 2018, there was an agreement between two or more people *to traffic in counterfeit goods, labels, or packaging*; and (2) the defendant became a member of that conspiracy, knowing of at least one of its objects and intending to help accomplish it." *Id* (emphasis added).

8.    In its forfeiture motion and proposed findings of fact and conclusions of law, the government is silent as to the counterfeit element. It offers no evidence or argument by which the Court could conclude that every item sold as new

was also counterfeit.

9.    Relevant evidence to that effect was, however, presented at trial and in Mr.

Bibikov's forfeiture evidence.

### 1.   Evidence About the Products' Authenticity

10.   Expert witnesses James Hogg from Samsung and Leah Caras from Apple

evaluated the authenticity of products tied to Mr. Bibikov.

#### a.   Sales to Undercover Officer and Confidential Informant.

11.   In December 2017, Mr. Bibikov sold a phone to Agent Sheehan on Amazon.

Ex. 5006. Apple's expert Leah Caras testified that the phone was counterfeit.

Trial 1 Tr. at 2565-66, 2989-90; *see also* Def. Forfeiture Ex. D7.5E_APPLE-

000001 (identifying the phone as 1B 98 and indicating that Ms. Caras found

the phone, accessories, and packaging counterfeit). By convicting Mr.

Bibikov of counts 9 and 18, the jury also determined the phone was

counterfeit.

12.   On December 2, 2016, Mr. Bibikov sold eleven iPhones, packaging, and

chargers to the CI in the small warehouse during the hand-to-hand

undercover purchase. *See* Exs. 2010A (video); Ex. 2010B (photographs); Ex.

5010A (phones); 5010B (packaging); 5010C (chargers and cables).

a.   Ms. Caras determined that the iPhones, Exs. 5010.A.1–A.4, were

counterfeit. Trial 1, Tr. at 2607–12; *see also* Def. Forfeiture Ex.

Exhibit D7.5K_APPLE-001194 (indicating that Ms. Caras found the

phones, identified as 1B 36, counterfeit).

b. Ms. Caras determined that the iPhone boxes with earbuds, Exs.

5010.B.1.–B.5, were counterfeit. Trial 1, Tr. at 2601–07.

c. Ms. Caras determined that the Apple chargers, Exs. 5010C.1–C.6,

were counterfeit. Trial 1, Tr. at 2613–15; *see also* Def. Forfeiture Ex.

Exhibit D7.5E_APPLE-000001 (indicating that Ms. Caras found the

adapters and cables, identified as 1B 35 counterfeit). The jury,

however, acquitted Mr. Bibikov of the associated count. Dkt. 1598.

### b. Package Warrant

13. During the execution of the package warrant, law enforcement collected

outbound packages from BuyNowCell, a business that Mr. Bibikov operated

and shared with Tim Babichenko. On August 21 and 22, 2018, law

enforcement collected 14 packages from BuyNowCell, which contained

Apple and Samsung cellphones. Ex. 2300; *see also* Ex. 2304, at 8–11

(photographs of BuyNowCell packages collected during Package Warrant).

a. Ms. Caras testified that Exhibit 5304 (sample 20 from the package

warrant) was counterfeit based on printing on the back plate. Trial 1

Tr. at 2625-2626.

b.  Ms. Caras testified that Exhibit 5308, an iPhone and its packaging

(sample 22 from the package warrant) were counterfeit. Trial 1 Tr. at

2628-30.

c.  Mr. Hogg testified that a Samsung phone, Exhibit 5303, was

counterfeit. Trial 1 Tr. at 3126

d.  Mr. Hogg determined that for sample 73, the phone and packaging

were counterfeit, the travel adapter was authentic, and the cable and

earbuds were undetermined. Ex. 14214.

14.  During the execution of the package warrant, law enforcement also collected

42 Samsung phones from outbound packages sent by TimeToCell, another

business that Mr. Bibikov operated. Mr. Hogg analyzed 10 samples:

a.  For sample 44, he found that the phone and travel adapter were

authentic, but the packaging, cable, and headset were counterfeit. Ex.

14214.

b.  For sample 45, he found that the phone was authentic, the packaging

was counterfeit, the adapter was authentic, the cable was counterfeit,

and the headset was counterfeit. *Id.*

c.  For sample 46, he found that the phone was authentic, but the

packaging, adapter, cable, and headset were counterfeit. *Id.*

d.  For sample 47, he found that the phone was authentic, but the headset and cable were counterfeit. *Id.*

e.  For sample 48, he found that the phone packaging was counterfeit, the adapter was authentic, the cable was undetermined, and the headset was counterfeit. *Id.*

f.  For sample 115, he found that the phone and travel adapter were authentic, but the packaging was counterfeit. *Id.*

g.  For samples 116, 117, and 118, he found that the phone and travel adapter were authentic, but the packaging and headset were counterfeit. *Id.*

h.  For sample 119, he found that the phone was authentic, but the packaging and headset were counterfeit. *Id.*

c.  *Office 2 in the Small Warehouse*

15.  At Mr. Bibikov's office in the small warehouse and in the warehouse lobby, law enforcement seized phones, labels, packaging, and accessories. Trial evidence showed these items are attributable to Mr. Bibikov. Ex. 14111; Ex. 14123; Def. Forfeiture Ex. D7.1B.

16.  Apple examined samples from many line items.

a.   Ms. Caras testified that Apple Stickers, Ex. 5501.D, were counterfeit. Trial 1 Tr. at 2707.

b.   Ms. Caras testified that several iPhones and accessories, Ex. 5501.E–H, were counterfeit. Trial 1, Tr. 2707–13; *see also* Def. Forfeiture Ex. D7.5E_APPLE-000001 (identifying the evidence by 1B 156 and listing counterfeit findings for the iPhone 7 packaging, 5W adapter and lightening cable); Def. Forfeiture Ex. D7.5E_APPLE-000001 (identifying the evidence by line item 1A and finding the box, 5W adapter and headphones counterfeit).

c.   Ms. Caras testified that packaging for iPhones, packaging, and accessories seized from the office lobby floor, Exhibit 5502, were counterfeit. Trial 1 Tr. 2707-13. *See also* Def. Forfeiture Ex. D7.5E_APPLE-000001 (identifying packaging as 1B 166 and listing counterfeit findings for the logos and printing on the packaging); Def. Forfeiture Ex. D7.5F_APPLE-0000205 (listing the evidence by line 5c and listing the iPhone in red to reflect the finding was undetermined).

d.   Ms. Caras testified that numerous iPhones (without boxes or packaging), Ex. 5503.B.1–B.12, were counterfeit. Trial 1, Tr. 2715–

**MEMORANDUM DECISION AND ORDER - 13**

24; *see also* Def. Forfeiture Ex. D7.5E_APPLE-000001 and Def.

Forfeiture Ex. D7.5F_APPLE-000205 (identifying phone from Line

57 as counterfeit).

e. Ms. Caras testified that Apple labels, Ex. 5504, were counterfeit. Trial
1, Tr. 2725.

f. Ms. Caras determined that the phones, packaging, and accessories
inventoried at Line 59 (also identified as 1B 227) were counterfeit.
Defense Forfeiture Exs. D7.5E_APPLE-000001; D7.5F_APPLE-
000205.

g. Apple experts determined that the 5W adapters inventoried at line 82
were counterfeit. Def. Forfeiture Exs. D7.5E and D7.5F.

h. Apple experts determined that the 5W adapters and lightening cables
inventoried at line 93 were counterfeit. Def. Forfeiture Exs. D7.5E
and D7.5F.

17. Samsung examined samples from several line items.

a. Mr. Hogg testified that Samsung phones, Ex. 5503, were counterfeit.
Trial 1 Tr. at 2956-61.

b. Mr. Hogg testified that a box with Samsung packaging, Ex. 5513, was
counterfeit. Trial 2, Tr. 2778–79.

**MEMORANDUM DECISION AND ORDER - 14**

    c.  Mr. Hogg testified that flattened Samsung boxes, Exs. 5501.A, 5501.B, 5501.C, were fake. Trial 2, Tr. 2777–78.

    d.  Mr. Hogg determined that line items 1B 158, 1B 160, 1B 162, 1B-164, and 1B 165 contained counterfeit phone boxes, quick start guides, and ear buds, but authentic travel adapters. Ex. 14214; Def. Forfeiture Ex. D7.5L.

*d. Additional Considerations*

18.   Brand representatives from Apple and Samsung testified that more than 90% of the items reviewed over the course of years-long investigation bore counterfeit marks. *See, e.g.*, Trial 2 Tr. at 2787, 2803–04, 2999, 3003, 3007.

19.   Mr. Bibikov has not offered any evidence of even a single sale that included genuine phone, accessories, and packaging.

**2. Money Judgment**

20.   Based on this evidence, the Court finds that every sale of an Apple or Samsung branded item included counterfeit goods, labels, *or* packaging.

21.   True, the evidence shows that in at least some instances Mr. Bibikov sold authentic, refurbished phones in counterfeit boxes. As he points out, this may warrant only the forfeiture of net proceeds under the fraud statute.

22.   However, the Court does not need to resolve that issue, because Mr. Bibikov

was convicted of conspiracy to traffic in counterfeit goods, labels, and packaging. As noted, Congress has authorized extremely broad forfeiture for that crime. *Order*, Dkt. 1678 at 6-7.

23.  Mr. Bibikov must forfeit "proceeds obtained directly or indirectly as a result of the commission of" the offense. 18 U.S.C. § 2323(a)(1). Money obtained through the sale of counterfeit items constitutes proceeds obtained directly through the offense. Proceeds for authentic items sold with the counterfeit items constitutes proceeds obtained indirectly as a result of the offense. Both are forfeitable under the statute.

24.  Mr. Bibikov must forfeit the gross proceeds of all his Amazon sales for Apple and Samsung branded items.

25.  The Court will enter a money judgment in the amount of $4,710,207.11.

**B.    Facilitating Property**

26.  Mr. Bibikov used business bank accounts to perpetuate his fraudulent businesses, including the bank accounts identified in Property Nos. 4.A (Acct No. 7324-ICON—$259,911.65) and 4.B (Acct No. 7324-ICON—$122,611.65). *See* Ex. 1250, at 3; Ex. 1254, at 2, 4. The Court finds that the funds seized from these accounts are facilitating property and will order their forfeiture. The Court will further order that the assets be used to satisfy Mr.

Bibikov's money judgment to avoid double counting. *See Order*, Dkt. 1766 at Part A.

**C.     Eighth Amendment**

27.    For the reasons explained in the Court's forfeiture order against Defendants Paul Babichenko, Peter Babichenko, Tim Babichenko, and Mikhail Iyersalimets, the Court finds this money judgment does not violate the Eighth Amendment. *Id*. Although the money judgment is about 2.35 times the $2,000,000 maximum penalty for counterfeit trafficking, the disparity is warranted because it corresponds to the injuries sustained by the trademark holders and the defrauded consumers because of Mr. Bibikov's nearly 15,500 counterfeit sales.

**D.     Time to Object**

28.    Federal Rule of Criminal Procedure 32.2(b)(2) provides that "[u]nless doing so is impractical, the court must enter the preliminary order sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant [at sentencing] under Rule 32.2(b)(4)."

29.    This order will be issued the day before Mr. Bibikov's sentencing, which does not afford the parties time to suggest revisions or modifications.

MEMORANDUM DECISION AND ORDER - 17

Therefore, the Court will issue this as a general order under Rule

32.2(b)(2)(C). The parties may file objections within seven days of the order

and, if appropriate, the Court will amend the order and issue a final order

under Rule 32.2(e)(1).

## ORDER

**IT IS ORDERED that:**

1.      The government's motion for preliminary order of forfeiture (Dkt. 1644) is

GRANTED.

2.      The Court will grant the government a money judgment of $4,710,207.11

against Mr. Bibikov.

3.      The Court will order the forfeiture of the following properties:

      a.  Property No. 4.A: Acct No. 7324-ICON ($259,911.65)

      b.  Property No. 4.B: Acct No. 7324-ICON ($122,611.65)

DATED: March 22, 2023

_____
B. Lynn Winmill
U.S. District Court Judge